IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SHAWN E. HOLLAND                                                                                      PLAINTIFF

v.                                            CASE NO.        12-3047

CAROLYN W. COLVIN, Commissioner
of Social Security Administration                                                         DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### I. Procedural Background:

The plaintiff filed her applications for DIB and SSI on March 30, 2012, alleging an onset date of January 5, 2009, due to plaintiff's Degenerative disc disease and osteoarthritis/back and neck pain. (T. 168).   Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on February 4, 2010.  Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 34 years of age and possessed a GED.  The Plaintiff  had past relevant work ("PRW") experience as a  Machine Operator, Farm

Worker and Construction Worker.  (T. 169).

On August 10, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's DDD/OA of the cervical and lumbar spine, hypertension and obesity did not meet or equal any Appendix 1 listing.  T. 12.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work with additional restrictions.  T. 12.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could  perform the requirements of representative occupation such as  ticket checker and electronics assembler. T. 16.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden

of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

The ALJ found that "that the claimant has the residual functional capacity to perform sedentary work as defined 20 CFR 404.1567(a) and 416.967(a) except he requires a sit/stand option; is unable to climb, kneel, crouch, or crawl; and can only occasionally balance and stoop. Additionally, he is limited to no overhead work, no operation of foot controls, no driving as part of work, and no work around unprotected heights or moving machinery. He must also avoid temperature extremes as well as concentrated exposure to wetness and humidity.

The only contention that the Plaintiff makes is that the ALJ's RFC determination is not

supported by the evidence.  The Plaintiff contends that the "objective medical evidence supports Shawn's contention that due to his history of chronic low back pain with degenerative disc disease that he lacks the residual functional capacity to perform any work, let alone sedentary work."  (ECF No. 6, p. 10).

A.  **Residual Functional Capacity:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record.  *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing  Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence,

we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

The Plaintiff had a long history of being treated for back pain by his family physician, Dr. Horton, beginning in 2002. (T. 293). He injured his back in 2003 lifting a piano but had no radicular pain. (T. 289). He had lumbar strain "without radiation down the legs" in 2008 (T. 243) and x-rays showed early OA changes but no acute changes were seen. (T. 249).

Mark W. Coburn, M.D., reported that an April 9, 2009, lumbar spine MRI revealed small disc protrusions at L4-5 and L5-S1 (Tr. 237). More specifically, Dr. Coburn offered the following interpretation:

> L4-5: Tiny right paracentral disc protrusion with minimal narrowing of the thecal sac. This is best seen on axial T2 images.
> L5-S1: Small disc bulge and small central disc protrusion **without nerve root compression** or **significant narrowing of the thecal sac**.

(Tr. 237). A cervical spine MRI revealed :

"moderate left foraminal narrowing at C3-5, otherwise no significant abnormality"

(Tr. 236, 247).

Shortly after the Plaintiff filed for benefits in April 2009 he was seen by Dr. Brownfied who conducted a consultive examination on June 9, 2009. (T. 258). Examination revealed no muscle weakness, no muscle atrophy, and no sensory abnormalities (Tr. 261). Straight-leg-raising testing was negative (Tr. 261). Plaintiff could walk without assistive devices and could squat and arise from a squatting position (Tr. 261). With respect to gait, Plaintiff had a stoop (Tr. 261). Plaintiff's lumbar spine flexion range of motion was limited to thirty degrees (Tr. 260). Plaintiff

had full range of motion of his cervical spine and all joints (Tr. 260). Dr. Brownfield noted a diagnosis of chronic low back pain secondary to advanced degenerative disc disease, and neck pain (Tr. 262). Dr. Brownfield noted moderate to severe limitation with respect to prolonged position; and severe limitation on stooping, lifting, pushing, and pulling (Tr. 262).

A physical RFC assessment was completed by a non-examining consultive physician, Dr. Bill Payne, on June 10, 2009.  Dr. Payne considered the MRI of the Plaintiff's spine of Aril 2009 and he noted full range of motion of the cervical spine and joints, the straight leg raise was negative, he had no neurological deficits and no muscle weakness or atrophy and assessed the Plaintiff to have a light RFC. (T. 273).  Dr. Payne felt the Plaintiff could lift 20 pounds occasionally and 10 pounds frequently and that he could stand and/or walk and could sit for six hours in a eight hour work day. (T. 267).  Dr. Jerry Mann reviewed and confirmed Dr. Payne's assessment on July 31, 2009.  (T. 314).

The Plaintiff presented a Physical Residual Functional Capacity Questionnaire  by Dr. Horton on January 4, 2010 shortly before the hearing date.  Dr. Horton was the Plaintiff long time treating physician. Dr. Horton's opinion was that the Plaintiff could only sit or stand for 30 minutes before needing to get up or sit down respectively (T. 324) and that he could only sit stand/walk for less than two hours in an 8-hour work day. (T. 325).  Dr. Horton felt that the Plaintiff could only occasionally lift less than 10 pounds and never lift any greater weight (Id.). He also felt that he could never stoop, crouch/squat, or climb ladders and only rarely twist or climb stairs (T. 326).

A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527 (d)(2); *Perks*, 687 F.3d at 1093-94 (*quoting Kirby v. Sullivan,* 923 F.2d 1323, 1328 (8th Cir. 1991)). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21 (internal quotations omitted).

Under the Social Security regulations, the amount of weight given to a non-controlling medical opinion is determined by applying the following factors: (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(d), 416.927(d); *See Owen v. Astrue* 551 F.3d 792, 800 (C.A.8 (Iowa),2008) *citing Wagner*, 499 F.3d at 848. (concluding that ALJ properly considered claimant's "noncompliance for purposes of determining the weight to give [doctor's] medical opinions"); Crease v. Astrue 2012 WL 380277, 4 (N.D.Cal.) (N.D.Cal.,2012).

Dr. Horton's x-rays in 2002 showed only "mild OA" and when the Plaintiff injured his back lifting a piano in 2003 the doctor noted that there was "no radicular [1]pain" and he

---

[1]radiculopathy is disease of the nerve roots.

authorized him to return to work. (T. 289). In 2008 Dr. Horton's notes reflect the Plaintiff was complaining of low back pain "without radiation down the legs" and his straight leg raise was negative. (T. 243). None of Dr. Horton's record's ever show that the Plaintiff had any evidence of radicular pain. A review of the x-rays by the radiologist in August 2008 showed "early osteoarthritis changes" and "no acute changes seen". (T. 249). This is basically the same evaluation that the Plaintiff received six years earlier. The MRI taken in April 2009 showed only very minor abnormalities (T. 235, 237). The ALJ also noted that Dr. Horton had never referred the Plaintiff to any other doctor for treatment but only pursued conservative treatment. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).

The ALJ, however, did not rely on Dr. Horton's treatment history to discount the treating physician's opinion but, after the hearing, he had a consultive evaluation performed by a Board Certified Orthopaedist, Dr. Ted Honghiran. Dr. Honghiran had all of the Plaintiff's medical records (T. 333) and in addition he obtained his own x-rays of the cervical and lumbar spine (T. 331). Dr. Honghiran noted that the Plaintiff drove 21/2 hours from his home in Green Forest to the doctor's office in Little Rock. In regards to his lumbar spine the doctor noted Plaintiff was able to flex 60 degrees, bend side to side 25 degrees, with no acute muscle spasms and no severe pain on range of motion and that his straight leg raises were negative on both sides. He also had normal reflex and sensation in both legs. The cervical spine was completely normal. (T. 334). Dr. Honghiran noted that the x-ray of the cervical spine was completely normal and the x-ray of the lumbar spine "showed minimal degenerative disc disease a the L4-5 and L5-S1 level" (Id.).

Dr. Honghiran then prepared a MSS of the Plaintiff's ability to do work and found that he

could frequently lift and/or carry up to 20 pounds and occasionally lift up to 100 pounds. (T. 336). Dr. Honghiran felt that the Plaintiff could sit for up to 4 hours in an 8-hour work day (up to 2 hours without interruption) and could stand and/or walk up to t2 hours in an 8-hour work day (1 hour without interruption). (T. 338).  Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527

Dr. Honghiran, Dr. Brownfield, Dr. Payne and Dr. Mann's opinion were all basically consistent with each other but vary a great deal from the opinion of Dr. Horton.  It is the ALJ's job to reach a decision as to the claimant's legal disability by evaluating the objective medical evidence before him. *Cox v. Barnhart* 345 F.3d 606, 608 (C.A.8 (Ark.),2003). "When one-time consultants dispute a treating physician's opinion, the ALJ must resolve the conflict between those opinions." *See Wildman v. Astrue* 596 F.3d 959, 969 (C.A.8 (Iowa),2010) citing *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir.2007). The court finds that the ALJ properly considered the weight to be give to the Plaintiff's treating physician and for proper reasons discounted that opinion.

### IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this March 25, 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE